John R. WARNICK, Educators Financial Services Corp.; Lorentzen & Associates Financial Services; Staudacher Agency; Dinan Agency; Assurance Marketing Services, Inc.; J. Cameron Cutler; M. Delmar Green; Hans G. Lorentzen; Ray Staudacher; Brendan M. Dinan; Cheryl J. Warnick; Pete W. Warnick; James C. Freeby; Randy B. Martin; Steve A. Wilson; and Dan C. Cummings, Plaintiffs,

v.

WASHINGTON EDUCATION ASSOCIATION and Frank B. Hall & Company of Washington, Defendants.

No. C–83–362.

United States District Court, E.D. Washington.

June 8, 1984.

Carl Maxey, Maxey Law Offices, Spokane, Wash., for plaintiffs.

Bruce E.H. Johnson, Davis, Wright, Todd, Riese, Todd, Seattle, Wash., for defendants Hall & Co. & Greenco.

Marvin B. Durning, Judith Lonnquist, Durning, Webster & Lonnquist, Seattle, Wash., for defendants WEA, Johnson Mead Educ. & Kosteka.

## MEMORANDUM OPINION

ROBERT J. McNICHOLS, Chief Judge.

In this action the plaintiffs allege that the defendants' activities are in violation of sections 1 and 2 of the Sherman Act and that they have been damaged thereby. They further allege various state claims on the basis of pendent jurisdiction.

Jurisdiction of this court is based upon section 4 of the Clayton Act, 15 U.S.C. § 15.

The defendants have moved to dismiss the complaint on several grounds. Voluminous memoranda and supporting material have been filed and the matter was fully argued. The motions are now ripe for disposition.

### I. FACTUAL BACKGROUND

The underlying facts are undisputed. Plaintiffs, Educators Financial Services Corporation, Assurance Marketing Services, Inc., and their employees, officers and agents, seek treble damages resulting from alleged antitrust violations. In addition, plaintiffs maintain that this Court has pendent jurisdiction over various state tort claims.

Plaintiffs contend that defendant Washington Education Association (WEA) and its broker (Frank B. Hall & Co.) and agents (Greenco Services, Inc.) have conspired to restrain trade in the sale of tax sheltered annuities (TSA's) to Washington State school district employees. The alleged conspiracy consists of the sponsorship and en-

dorsement by WEA of the TSA program as well as insurance sold by the defendant Hall and his agents.

Defendant WEA is a public sector union representing school teachers in the State of Washington. The union "endorses" defendant insurance brokers as the exclusive annuity contractor for the school employee TSA program. These union-sponsored insurance agents have access to teacher mail boxes and to teacher lounges to the exclusion of other insurance agents.

The participation by school employees in the Union sponsored plan is optional. Those employees who decide to participate, authorize premiums to be deducted from their salary through a "salary reduction agreement" and paid by WEA to the annuity supplier.

It is clear that the employees are not forced to buy TSA's from the defendant agents; they are free to purchase them in the market or not purchase them at all.

Plaintiffs are challenging the union's exclusive endorsement practice as violative of federal antitrust laws. Defendants contend (1) that the individual plaintiffs as employees, officers and agents of the plaintiff insurance broker, lack the requisite standing to sue under section 4 of the Clayton Act, and (2) that in any case, they are exempt from liability under the "labor exemption" to the antitrust laws.

## II. ANTITRUST INJURY

Section 4 of the Clayton Act, 15 U.S.C. § 15, provides a private treble-damage cause of action for parties injured by antitrust violations. The threshold inquiry is whether plaintiffs have stated sufficient facts to support their allegations that an antitrust violation has occurred. I find that plaintiffs have failed to meet this initial burden.

### A. Refusal to Deal.

■ To establish a per se violation of section 1 of the Sherman Act "a plaintiff must generally show that the defendant engaged in concerted anticompetitive activity with others at the same level of market organization." *General Business Systems v. North American Philips Corp.*, 699 F.2d 965, 978 (9th Cir.1983). Although plaintiffs and the defendant agents may be in the same market level, I conclude as a matter of law that the defendant WEA's sponsorship of the defendant agents does not amount to concerted anticompetitive activity.

■ This type of exclusive arrangement, without more, is not violative of section 1. To prove a violation under section 1, plaintiffs must show a contract, combination or conspiracy in restraint of trade. 15 U.S.C. § 1.[1] As the court stated in *Determined Productions v. R. Dakin & Co.*, 514 F.Supp. 645, 646 (N.D.Cal.1979), *aff'd mem.*, 649 F.2d 866 (9th Cir.1981):

> We must begin with the well-settled proposition that a trader has the right to deal or refuse to deal with whomever he pleases for reasons sufficient to himself. [citations omitted] A refusal to deal is not unlawful unless it implements an arrangement to restrain trade by, for example, enforcing price maintenance, barring a competitor from a market or maintaining a dominant market position.

■ Although WEA provides TSA's exclusively through defendant Hall and its agents, I have concluded that this sponsorship does not rise to a level of an agreement violative of the antitrust laws. This arrangement between WEA and its members does not bar the plaintiffs from the market nor does it permit the defendant agents to maintain a dominant market position. WEA members are not forced to deal with the defendant agents in purchasing TSA's.[2] Rather, the teachers may pur-

---

**1.** 15 U.S.C. § 1 provides in part that "[e]very contract, combination ... or conspiracy, in restraint of trade or commerce among the several States ... is declared to be illegal."

**2.** *Cf. Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* —— U.S. ——, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984) where the Supreme Court held that tying arrangements under the Sherman Act need only be condemned if they restrain competition on

chase the TSA's from competitor agents or they may choose not to purchase TSA's at all.

### B. *Attempted Monopolization*

 Plaintiffs allege that WEA and defendant insurance agents attempted to monopolize the business of selling TSA's. Three elements are necessary to prove an attempted monopolization claim in this circuit: "(1) specific intent to control prices or destroy competition in some part of commerce; (2) predatory or anticompetitive conduct directed to accomplishing the unlawful purpose; and (3) a dangerous probability of success." *Wm. Inglis, Etc. v. ITT Cont. Baking Co.*, 668 F.2d 1014, 1027 (9th Cir.1981), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). The factual allegations do not meet this standard.

### III. ANTITRUST STANDING

Although I have concluded that plaintiffs failed to allege an antitrust injury, I will assume such injury exists in order to complete the analysis of whether plaintiffs are proper parties to enforce the antitrust laws.

The class of persons who may maintain an action for damages under federal antitrust laws is defined in section 4 of the Clayton Act, 15 U.S.C. § 15 which provides in pertinent part:

> [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States ....

Although the statute could be read as affording relief to all persons who have been injured by antitrust violations, the Supreme Court has defined a cognizable antitrust injury as "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). The doctrine of antitrust injury has received

the merits by forcing purchases that would not

careful, and not always consistent, attention in numerous opinions. Recently, in *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), the Supreme Court attempted to clarify the concept of antitrust injury. The Court held that in determining whether a plaintiff may recover for alleged injury, the Court must evaluate "the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *Associated General Contractors*, 103 S.Ct. at 907.

 In the past, courts have labelled the issue of antitrust injury as "antitrust standing." However, recent case law suggests that these terms are not synonymous. Although a showing of harm to the antitrust plaintiff may be sufficient to satisfy the constitutional standing requirement of injury in fact, "the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." *Associated General Contractors*, 103 S.Ct. at 907, n. 31.

 The court in *Associated General Contractors* focused on the absence of antitrust injury and the indirectness of the asserted injury in determining whether sufficient allegations of antitrust injury had been made. *Id.* at 910–912. In this case, the nature of the injury asserted by plaintiffs is not of the type the antitrust laws were intended to forestall, nor are plaintiffs' injuries directly related to the alleged antitrust violations. Assuming for purposes of argument that the loss of premiums by Federated American and Beneficial Standard may constitute antitrust injury, the lost commissions claimed by their sales agent-representatives constitute derivative rather than direct injury. Similarly, the plaintiffs who sell life insurance or prepare tax returns certainly have no antitrust injury, as no defendant is alleged to compete with the plaintiffs in the sale of life insurance or tax services.

otherwise be made.

## IV. ANTITRUST IMMUNITY

■ Even if a claim had been stated, and even if the plaintiffs in this action had standing to sue, the defendant WEA is immune from prosecution under the labor exemptions to the federal antitrust laws.

Labor organizations are afforded substantial immunity under the "statutory" exemptions to the federal antitrust laws contained in sections 6 and 20 of the Clayton Act, (15 U.S.C. § 17; 29 U.S.C. § 52) and in the Norris-LaGuardia Act (29 U.S.C. § 101). Section 6 of the Clayton Act immunizes from antitrust liability unions "lawfully carrying out [their] legitimate objectives". 15 U.S.C. § 17. In *United States v. Hutcheson,* 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788 (1941), the Supreme Court held that under section 20 of the Clayton Act union activities are exempt from antitrust liability so long as they are: (1) in the union's self-interest; and (2) not in combination with a "non-labor" group.

Since providing its members with TSA's is clearly in the union's self-interest, the dispositive issue under *Hutcheson* is whether defendant agents are a "non-labor" group within the meaning of that case. If there is some job, wage, or "other economic interrelationship affecting legitimate union interests" then the agents do not constitute a non-labor group. *American Federation of Musicians v. Carroll,* 391 U.S. 99, 106, 88 S.Ct. 1562, 1567, 20 L.Ed.2d 460 (1968); *see also, H.A. Artists & Associates v. Actors' Equity Assn.,* 451 U.S. 704, 721–22, 101 S.Ct. 2102, 2112–13, 68 L.Ed.2d 558 (1981).[3]

The insurance agents retained by WEA are involved in an "economic relationship" with the union members "affecting legitimate union interests". These agents are serving the interests of the WEA members in a "wage" matter by providing TSA's, and are thus not a "non-labor" group.

By way of analogy, assume the following situation: a union negotiates with a provider of medical and hospital insurance to provide such insurance for its members. The union and the employer agree in their Collective Bargaining Agreement that the payroll deduction plan can be utilized to pay the premium. The union then receives the deducted premiums from the employer and pays them to the provider of the insurance. The program is entirely voluntary and the members may elect to utilize that plan or they are free to buy their own medical and hospital coverage in the market. Would the other health providers be entitled to maintain an action under the Federal antitrust laws? I think not.

It strikes me that a union or a business entity still has a right to decide with whom it wishes to do business. The various intangibles which go into such a relationship such as service, dependability, convenience and the like are often as critical as the specific product or service itself.

The essence of the complaint in this action does not, in my judgment, state a claim under the appropriate federal antitrust statutes. There may be allegations of circumstances about which the union members might have legitimate concern. There are allegations of conduct which may constitute a claim under some other theory and probably in some other tribunal. However, the basis of jurisdiction in this court is limited to the federal statute.

The original complaint was amended twice. The plaintiffs have had ample opportunity to allege a proper claim, if one in fact exists.

Having concluded that the federal claims should be dismissed, the pendent claims under state law will also be dismissed.

The Clerk shall enter judgment dismissing this action with prejudice.

IT IS SO ORDERED.

---

**3.** The court in *H.A. Artists* noted in a footnote that "Even where there are union agreements with nonlabor groups that may have the effect of sheltering the nonlabor groups from competition in product markets, the Court has recognized a 'non-statutory' exemption to shield such agreements if they are intimately related to the union's vital concerns of wages, hours, and working conditions." 451 U.S. at 716, n. 19, 101 S.Ct. at 2109, n. 19.